IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW JAMES KASCHAK,   )
          Plaintiff,   )
          vs.   ) Civil Action No. 21-354-E
KILOLO KIJAKAZI,   )
          Defendant.   )

ORDER

AND NOW, this 3rd day of March 2023, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on July 18, 2022,

IT IS HEREBY ORDERED THAT THE Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on June 17, 2022,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED insofar as he has sought remand for further administrative proceedings.  Accordingly, this matter is hereby remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**I.    Background**

Plaintiff protectively filed an application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, on August 27, 2019.  (R. 21).  After his claim was initially denied and again denied on reconsideration, Plaintiff sought an administrative hearing.  (*Id.*).  On March 31, 2021, Plaintiff appeared telephonically for a hearing before an Administrative Law Judge ("ALJ").  (*Id.*).  After the hearing, the ALJ issued her decision finding Plaintiff to have not been disabled from his alleged disability onset date (November 28, 2016) through the date of decision (April 22, 2021).  (R. 29—30).  Plaintiff

sought review of the decision before the Appeals Council, but the Appeals Council denied review (R. 1), making the ALJ's decision the final decision in this matter.  20 C.F.R. § 404.981.

## II.   Standard of Review

The Court reviews an ALJ's findings of fact for "substantial evidence," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g)), and the Court has plenary review with respect to legal questions.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not a high evidentiary threshold; it is satisfied when a conclusion is supported by "such relevant evidence as a reasonable mind might accept as adequate."  *Biestek,* 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The standard is deferential, but not so deferential that it ceases to be "a qualitative exercise."  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  An ALJ's decision must be thorough enough to permit understanding of the rationale underlying it.  *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (quoting *Hodes v. Apfel*, 61 F. Supp. 2d 798, 806 (N.D. Ill. 1999)) (directing ALJs to "build an accurate and logical bridge between the evidence and the result").  A reviewing court may not justify affirmance of an inadequately supported decision by relying on its own analysis of the claimant's record.  *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

ALJs evaluate alleged disability under the Act using a five-step sequential evaluation.  *Edwards v. Berryhill*, No. CV 16-475, 2017 WL 1344436, at *1 (W.D. Pa. Apr. 12, 2017).  Pursuant thereto:

> The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's

>   impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity.

*Id.* (citing 20 C.F.R. § 404.1520).  The resolution of steps four and five are only possible once an ALJ has formulated a claimant's residual functional capacity ("RFC"), which is a finding of "the most [a claimant] can still do despite [his or her] limitations" from "medically determinable impairments" including those that are not severe.  20 C.F.R. §§ 404.1545(a)(1)—(2), (5).

### III.    The ALJ's Decision

In this matter the ALJ first found Plaintiff had not engaged in any substantial gainful activity since his alleged onset date.  (R. 23).  Next, the ALJ found Plaintiff had thirteen severe, medically determinable impairments: "sarcoidosis, restrictive lung disease, right shoulder superior labral irregularity status post surgical repair, right shoulder arthrosis, right knee degenerative joint disease, cervical spine degenerative disc disease, scoliosis, hypertension, obstructive sleep apnea, obesity, depression, anxiety, and posttraumatic stress disorder."  (*Id.*). Next, at step three, the ALJ considered whether any of Plaintiff's impairments—singularly or in combination—met or equaled the severity of one of the presumptively severe impairments listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1, but found that Plaintiff did not have such an impairment.  (R. 24).  In her evaluation of Plaintiff's mental impairments at step three, the ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself.  (R. 24—25).  She explained these findings were separate from her evaluation of Plaintiff's RFC while noting that the RFC "reflect[ed] the degree of limitation [she] found" at step-three.  (R. 25).

Next, to facilitate the remaining two steps of the evaluation, the ALJ formulated Plaintiff's RFC. (R. 25). She considered that Plaintiff alleged he was limited by: problems with his lungs, *e.g.*, that he had prolonged coughing fits upon exposure to chemicals; pain, including chest pain, shoulder pain, and back pain; pain-related limitations of his ability to lift, throw, reach, walk, and bend; and difficulties related to worsening mental health, *e.g.*, disrupted sleep, anger, and erratic behavior. (R. 26). Considering these allegations against the other evidence in Plaintiff's administrative record, the ALJ determined Plaintiff's stated symptoms were not as intense, persistent, and limiting as alleged. (*Id.*). But, to accommodate the limitations Plaintiff had proven, the ALJ articulated an RFC that limited Plaintiff to light work with added limitations that restricted climbing (never for ladders, ropes, and scaffolds, but frequently for ramps and stairs), balancing/stooping/crouching/kneeling/crawling (frequently), reaching with the dominant upper extremity (occasional for reaching overhead and frequently for all other directions), pushing or pulling with the dominant upper extremity (occasional), and operation of foot controls (frequent). (R. 25). The ALJ further prohibited more than moderate noise exposure and more than occasional exposure to extreme temperatures and pulmonary irritants. (*Id.*). She completely ruled out exposure to hazards. (*Id.*). And she added that Plaintiff would be limited to simple and routine tasks, simple decisions, occasional interaction with supervisors and co-workers (without tandem tasks), no interaction with the public, and no more than few changes to work processes and settings. (*Id.*).

Based on this RFC determination, the ALJ found Plaintiff could not perform past relevant work as a corrections officer, animal trainer, infantryman , or CNC machine operator/mechanic. (R. 28). However, at the final step of the five-step evaluation, the ALJ found Plaintiff's RFC, age, education, and work experience would permit adjustment to other work in such occupations

4

as cleaner, marker, or routing clerk. (R. 29). Because these representative occupations corresponded to jobs in significant numbers in the national economy, the ALJ found Plaintiff was not disabled under the Act and denied his DIB application. (*Id.*).

IV.     **Legal Analysis**

Plaintiff has alleged two errors in the ALJ's decision. First, Plaintiff has argued that the ALJ erred in her evaluation of the medical opinion evidence authored by the psychological consultative examiner ("CE") Tammy Connell, M.A., in that the ALJ failed to evaluate Ms. Connell's opinions pursuant to 20 C.F.R. § 404.1520c. Second, Plaintiff has argued the ALJ erred in her evaluation of his subjective representation of symptoms and limitations. Plaintiff's first argument—concerning the ALJ's evaluation of Ms. Connell's opinions—is persuasive. As explained herein, the ALJ's evaluation of Ms. Connell's opinions fell short of what the regulations require.

In this matter, the ALJ's evaluation of medical opinion and prior administrative medical findings evidence was subject to 20 C.F.R. § 404.1520c because Plaintiff's DIB application was filed on or after March 27, 2017. Section 404.1520c(a) explains that when ALJs consider such evidence, they "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Pursuant to Sections 404.1520c(a)—(b), an ALJ must "evaluate the persuasiveness" of opinions and findings and "articulate . . . how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." Five factors are relevant to persuasiveness: supportability, consistency, relationship with the claimant, specialization, and "[o]ther factors." *Id.* § 404.1520c(c). Two factors are most important: "supportability . . . and consistency." *Id.* § 404.1520c(b)(2). ALJs must "explain how [they] considered the

supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* As for the other factors, only if "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," does it become necessary for an ALJ to "articulate how [he or she] considered the other . . . factors." *Id.* § 404.1520c(b)(3).

In this matter, the ALJ evaluated opinions and findings in evidence from at least five sources. (R. 28). One paragraph of her decision is dedicated to the articulation of her persuasiveness determinations for all opinions and findings in Plaintiff's record. Brevity is not antithetical to an ALJ's compliance with Section 404.1520c; however, in this case the ALJ's evaluation of the persuasiveness of Ms. Connell's opinions fell short of the regulation's standard for articulating persuasiveness determinations. As the Court has explained, an ALJ must address supportability and consistency. But the ALJ's evaluation of Ms. Connell's opinions includes no mention of supportability; rather, the ALJ explained her persuasiveness determination thus: "The opinion of the psychological consultative examiner is somewhat persuasive, however marked limitations are not supported by the record (Exhibit B4F). Nevertheless, the undersigned has greatly restricted claimant's interactions with others and limited him to unskilled work." (R. 28).

Therein, the ALJ appears to have addressed consistency, that is, "the agreeableness of [Ms. Connell's] medical opinions with 'evidence from other medical sources and nonmedical sources in the claim.'" *Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 n.2 (W.D. Pa. Jan. 25, 2023) (quoting 20 C.F.R. § 404.1520c(c)(2)).[1] Supportability is different from

---

[1] The Court notes that while the ALJ's consideration of consistency is itself quite brief, the ALJ's rationale in this regard is at least reviewable when the Court reads her decision "as a whole." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The ALJ did not

consistency in that it "is a measure of the relevancy of 'objective medical evidence and supporting explanations *presented by a medical source* . . . to support his or her medical opinion(s).'" *Id.* at *1 n.2 (quoting 20 C.F.R. § 404.1520c(c)(1)). The difference between the two has been explained by one court in this way: "supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Id.* (quoting *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021)). In this matter, the ALJ's evaluation of Ms. Connell's opinions shows her consideration of the latter but not the former.

The Acting Commissioner has sought to defend the ALJ's analysis by arguing there are no "magic words" an ALJ must use to articulate his or her consideration of supportability and consistency. (Doc. No. 15, pg. 17 (citing *Cooper v. Comm'r of Soc. Sec.*, 563 Fed. Appx. 904, 911 (3d Cir. 2014)). This premise is correct, and if the Court could detect consideration of supportability in the ALJ's evaluation of Ms. Connell's medical opinions despite the absence of a specific reference thereto, then remand would be unnecessary.[2] But the Court has found no coded reference to supportability in the ALJ's decision. Defendant has theorized that the ALJ implicitly explained her evaluation of Ms. Connell's opinions by finding the State agency

---

contemporaneously explain her finding that Ms. Connell's marked-limitations opinions were not supported by, *i.e.*, agreeable with, other evidence in the record, but her earlier reference to Plaintiff's daily activities and "largely normal" mental status examinations with significant improvement with medication compliance (R. 25, 27), shows the Court how the ALJ evaluated Ms. Connell's opinions with respect to consistency.

[2]   There is no "particular language" or "particular format" that ALJs must employ in their evaluations of alleged disability. *Jones*, 364 F.3d at 505. Given the straightforward directive in Section 404.1520c(b)(2) to articulate consideration of these two most important factors, explicit reference to those factors is certainly helpful to the courts' review of persuasiveness determinations, but not necessary.

psychological consultant's conflicting findings to be well-supported by the evidence of record and persuasive. (Doc. No. 15, pg. 18 ("By relying on Dr. Roberts' findings as a basis to discount certain aspects of Ms. Connell's opinion, the ALJ effectively endorsed Dr. Roberts' underlying assessment of Ms. [Connell's] opinion.")). The State agency psychological consultant reviewed Ms. Connell's opinions and explained he believed Ms. Connell had "overestimate[d] . . . the severity of the claimant's functional restrictions" in part because she "relied heavily on the subjective report of symptoms and limitations provided by [Plaintiff]" and because her opinions were based on just one encounter. (R. 111). Problematically, however, neither this analysis nor a specific adoption of it appears in the ALJ's decision, and the Court does not deal in proposed alternative justifications for an ALJ's final decision. *Fargnoli*, 247 F.3d 34, 44 n.7 (citing *SEC v. Chenery Corporation*, 318 U.S. 80, 87 (1943)).

      Defendant has also argued that Ms. Connell did not actually provide any supporting explanations or objective evidence for her finding of marked mental limitations except a reference to Plaintiff's diagnosis of post-traumatic stress disorder. This Court has previously found an ALJ's error in evaluating supportability was harmless error where a medical source had not offered explanations to support medical opinions. *Pipkin*, 2023 WL 411291, at *1 n.2. However, therein the Court explained its cautious invocation of the harmless error doctrine in social security disability appeals. *Id.* ("The Court is cautious in its invocation of the doctrine of harmless error when reviewing final decisions denying disability benefits applications because an ALJ's decision must rise or fall on its stated rationale."). Here, where Ms. Connell provided an, albeit limited, diagnostic explanation for her opinions that Plaintiff would be markedly limited in some respects the Court will not find the ALJ's error harmless as it did in *Pipkin*. The Court notes that the mental status examination accompanying Ms. Connell's opinion includes

8

findings that Plaintiff's affect was depressed, and his attention and concentration was mildly impaired. (R. 580). Because the ALJ did not address supportability, it is unclear whether the ALJ reviewed these findings to determine whether they supported or failed to support Ms. Connell's opinions. For this and the foregoing reasons, the Court cannot find the ALJ's decision to be supported by substantial evidence and free of legal error.[3]

V.     **Conclusion**

---

[3] Because the Court has found remand to be necessary due to the ALJ's failure to articulate her consideration of Ms. Connell's opinions pursuant to the standard set out in Section 404.1520c, the Court will only briefly address Plaintiff's second argument for remand. As noted above, Plaintiff also argued that the ALJ erred in her evaluation of his alleged symptoms and limitations. Plaintiff's argument appears to be largely based on the ALJ's employment of certain language that is commonly used by ALJs to introduce their discussion of evidence in a claimant's record after documenting the claimant's alleged symptoms and limitations. That oft-employed language, as it appears in the ALJ's decision in this matter, read: "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 26).

Plaintiff is right that if the ALJ's consideration of the evidence relevant to his alleged symptoms and limitations had stopped there, it would be too conclusory to permit meaningful review. But here, as in many cases, the ALJ's use of this common phrasing was followed by a review of the objective evidence in Plaintiff's record that shows why the ALJ found him to be less limited than alleged. For instance, Plaintiff had alleged he was unable to "walk on hard surfaces." (*Id.*). But, reviewing the objective evidence, the ALJ considered that objective records relevant to Plaintiff's knee pain showed normal range of motion and strength for his affected knee, and she further considered that objective records relevant to Plaintiff's back pain showed "improvement of pain with visible improvement in range of motion." (R. 27). Because no particular language or format is required for an ALJ's decision, *Jones*, 364 F.3d at 505, an analysis such as the one described here adequately shows why the ALJ did not fully credit Plaintiff's representation of his symptoms and limitations. Accordingly, the second issue Plaintiff has raised has not contributed to the necessity of remand. That said, the Court is remanding for further consideration of opinion evidence and recognizes that this could affect the review of Plaintiff's administrative record as a whole. So, to avoid any confusion about the breadth of remand, the Court notes that its Order remanding this matter is broad enough to permit further consideration of Plaintiff's alleged symptoms and limitations and other evidence in the record relevant to his allegations.

Because the Acting Commissioner is in the best position to address the oversight discussed throughout this order, remand is the most appropriate outcome in this matter. Accordingly, the Court remands this matter to the Acting Commissioner for proceedings consistent with the Order.

s/ Alan N. Bloch  
United States District Judge

ecf:    Counsel of Record